## In re HLAVSA.

[Cite as *In re Hlavsa* (2000), 139 Ohio App.3d 871.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 76767.

Decided Oct. 30, 2000.

---

*Matthew D. Golish,* Cuyahoga County Department of Children and Family Services, for appellee.

*McGinty, Gibbons, Hilow & Spellacy* and *Henry J. Hilow*; and *John H. Lawson,* for appellant.

*Christine T. Leneghan,* for guardian *ad litem.*

JOHN T. PATTON, Judge.

A juvenile division judge signed an order placing the children of father-appellant Ryan Hlavsa in the permanent custody of the Cuyahoga County Department of Children and Family Services. Before the order could be journalized, the Ohio Supreme Court suspended the judge from the practice of

law. We are asked to answer questions concerning the validity of the permanent custody order in light of its journalization after the judge's suspension took effect.

■■■■ Because the court speaks only through its journal, *Schenley v. Kauth* (1953), 160 Ohio St. 109, 51 O.O. 30, 113 N.E.2d 625, paragraph one of the syllabus, we consider only the journalized permanent custody entry. That entry was not journalized until nearly one month after the judge's suspension. Our previous cases have held that when a judgment entry is not journalized until after the expiration of a judge's term of office, the entry is ineffective. See *Vergon v. Vergon* (1993), 87 Ohio App.3d 639, 622 N.E.2d 1111; *Faralli Custom Kitchen & Bath, Inc. v. Bailey* (1995), 107 Ohio App.3d 598, 669 N.E.2d 270; see, also, *San Filipo v. San Filipo* (1991), 81 Ohio App.3d 111, 610 N.E.2d 493.

The agency argues that there should be a distinction between cases where a judge is suspended without notice and cases where the judge had prior notice that a term of office would expire and failed to take sufficient steps to ensure that an order would be journalized before the term of office expired. To support this argument, the agency cites our opinion in *Ingalls v. Ingalls* (1993), 88 Ohio App.3d 570, 624 N.E.2d 368. In *Ingalls*, a domestic relations division judge presided over a divorce trial that concluded just before the end of the year, and just before the judge's term of office expired. The judge issued a memorandum opinion directing the prevailing party to prepare a judgment entry in conformance with the memorandum opinion. The losing party requested findings of fact and conclusions of law, and the court issued a supplemental memorandum opinion that was not received for filing until after the first of the year—after the judge's term of office had expired. Objections were then filed to the proposed judgment entry and the successor judge overruled those objections. On appeal, the appellant argued that the successor judge lacked authority to sign the final judgment entry, since he did not preside over the trial.

The key distinction between *Ingalls* and this case is that a successor judge in *Ingalls* took some action on the judgment entry that legitimized it. Civ.R. 63(B) provides:

"[After verdict or findings.] If for any reason the judge before whom an action has been tried is unable to perform the duties to be performed by the court after a verdict is returned or findings of fact and conclusions of law are filed, another judge designated by the administrative judge * * * may perform those duties * * *."

In conformance with Civ.R. 63(B), the successor judge in *Ingalls* took over the retiring judge's docket. See, also, *Wesney v. Bellan* (Nov. 12, 1992), Franklin App. No. 92AP–203, unreported, 1992 WL 333051. In this case, no judge purported to take any further action on the matter.

■ With this argument in mind, the agency maintains that another judge did confirm the order after the judge's suspension—it points to the judgment entry's notation of filing date that is signed by the administrative judge of the juvenile division acting as ex officio clerk. The agency maintains this is the functional equivalent of a Civ.R. 63(B) successor judge.

The filing and journalization notation on the judgment entry is not a manifestation of another judge's intent to succeed to the judgment. The administrative judge was not acting as a judge—he was acting ex officio as clerk. R.C. 2151.12 states:

"Whenever the juvenile judge, or a majority of the juvenile judges of a multijudge juvenile division, of a court of common pleas, juvenile division, and the clerk of the court of common pleas agree in an agreement that is signed by the judge and the clerk and entered formally in the journal of the court, the clerks of courts of common pleas shall keep the records of such courts. *In all other cases, the juvenile judge shall be the clerk of the judge's own court.*" (Emphasis added.)

Because the juvenile division has no clerk of the court, the administrative judge signed the notation journalizing the judgment entry as ex officio clerk. This is not the same capacity as a successor judge reviewing a prior judgment.

■ The agency now states that an adverse decision would affect a number of pending cases by the same judge and submits an affidavit from the chief deputy clerk of the juvenile division to that effect. The affidavit is improper. It is a basic proposition of appellate review that we cannot add matter to the record before us and decide this appeal based upon that new matter. *Barnett v. Ohio Adult Parole Auth.* (1998), 81 Ohio St.3d 385, 387, 692 N.E.2d 135, 136–137. We therefore disregard the affidavit.

Because the court did not journalize the permanent custody judgment entry until after the judge had been suspended from the practice of law, we have no choice but to find the order appealed from is void. We therefore lack jurisdiction to hear the appeal. *San Filipo,* 81 Ohio App.3d at 112–113, 610 N.E.2d at 493–494.

*Appeal dismissed.*

KARPINSKI, P.J., and BLACKMON, J., concur.